522 A.2d 1207

Rose Conklin, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued November 18, 1986, before Judges CRAIG and BARRY, and Senior Judge KALISH, sitting as a panel of three.

*Jeffrey L. Greenwald,* with him, *David A. Scholl,* for petitioner.

*Ruth O'Brien,* Assistant Counsel, for respondent.

OPINION BY JUDGE BARRY, March 25, 1987:

This appeal results from an order of the Pennsylvania Department of Public Welfare (DPW) which adopted in its entirety the recommendation of a hearing officer that the appeal of the petitioner, Rose Conklin, should be dismissed. Petitioner had appealed the establishment of the placement "goal" of the family service plan established by the Children and Youth Services Division, Northampton County (CYSD), which plan governed her three children's foster care placement arrangement.

The issue in the present case is purely one of law and the facts to the extent relevant are not in dispute. Because of apparent family instability, Petitioner's three minor children were placed into foster care under the jurisdiction of. CYSD. Pursuant to DPW regulations,[1] CYSD established a family service plan and produced placement review reports every six months, *see* 55 Pa. Code §3130.71, detailing, among other things, (1) the basis of need for continued placement and compliance with the service plan; (2) the efforts taken by the agency to correct the unstable family condition; (3) the "placement goal" for the. children; (4) the actions taken

---

[1] *See infra* part 2 of this opinion.

by the parents to achieve the placement goal; and (5) the services to be provided on behalf of the parents to achieve the placement goal. In the placement review issued on June 6, 1984, the caseworker assigned to petitioner and her children indicated a placement goal of *adoption*, apparently for all three children.

That June 6, 1984 review was appealed by petitioner to the DPW Office of Hearings and Appeals, ostensibly under 55 Pa. Code §3130.62 ("Parent Appeals and fair hearings."). Petitioner indicated in the appeal that she disputed the placement goal of adoption. In response, CYSD asserted that jurisdiction over the issue was in the Northampton County Court of Common Pleas.

The hearing examiner thereafter recommended dismissal of the appeal, "as no right of appeal of the goal of a family service plan exists." That view was adopted by the Office of Hearings and Appeals (OHA), which likewise held that the *goal* of a family service plan could not be appealed, citing section 3130.62 in support. That section, OHA reasoned, specifically enumerated the aspects of the plan which were appealable, and the placement goal was not among them. In contrast, OHA observed, the regulations listed only actions concerning the *components* of the plan, *viz.*, the services to be provided in connection with the goal, as appealable. Petitioner's request for reconsideration from this adverse ruling was thereafter denied, and the present petition for review was then initiated.[2]

---

[2] Since the time of petitioner's petition for review, this Court has held that the proper order to be appealed is the final *administrative* order, *i.e.*, that of OHA. *See Ormes v. Department of Public Welfare*, 98 Pa. Commonwealth Ct. 588, 512 A.2d 87 (1986). The *Ormes* court invalidated DPW regulations which provided for a thirty-day appeal period from the time the Secretary responds to the request for reconsideration. Such a regulation was held to be inconsistent with Pa. R.A.P. 1701(b)(3). *Id.*

Our scope of review in the present case is limited to a determination of whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether any constitutional rights have been violated. *See Eye* & *Ear Hospital v. Department of Public Welfare,* 100 Pa. Commonwealth Ct. 363, 368, 514 A.2d 976, 978 (1986). Petitioner continues to assert that establishment of the "placement goal" was an appealable determination and hence that DPW erred in dismissing her appeal. We disagree and, thus, affirm.

OHA concluded that no appeal would lie from establishment of a goal based upon the following regulation, which does not provide in terms for such an appeal:

§3130.62. Parent appeals and fair hearings.

(a) The county agency shall provide to parents, along with a copy of the [family service] plan, a written notice of their right to appeal to the Department's Office of Hearings and Appeals, any determination which:

(1) results in a denial, reduction or termination of service;

(2) results in a determination that the parent or child must participate in a service;

(3) fails to take into account the parents' or child's choice of service; or

(4) fails to act upon a request for service with reasonable promptness.

. . . .

---

In the present case, the petition for review from the Secretary's denial was prosecuted *before* the *Ormes* decision, and we hence entertain the appeal. *See Nelson v. Department of Public Welfare,* 103 Pa. Commonwealth Ct. 21, 22 n.1, 519 A.2d 1062, 1063 n.1 (1986).

(g) In all appeal proceedings, the county agency shall have the burden of proving by clear and convincing evidence that the challenged term is necessary to achieve the goals of the service plan.

55 Pa. Code §3130.62. Considering these two subsections of the regulation, OHA concluded as follows:

A clear reading of subsection (g) indicates that a distinguishing is made between the terms (i.e., the *services*) of the family service plan from its goals. The County agency is required to prove the terms are necessary to achieve the ultimate objective of the plan.

The components of the family plan are proper matters for hearing before [OHA]; however, the goals of the service plan are not.

*OHA Decision* at 2.

## 1. *The Jurisdiction Issue*

On appeal, DPW defends and refines the foregoing conclusion. Its argument, distilled, is that while DPW plays the role of regulator of county children and youth agencies, and is the conduit for disbursing funds to those agencies,[3] it does not have exclusive jurisdiction over all matters which these agencies encounter. This reality, DPW asserts, is what lies behind its conclusion that the goal of a service plan is not appealable *to DPW*. Indeed, the agency maintains that the very reason a goal is not enumerated as appealable is that disputes over such determinations—the establishment of placement goals—are and always have been presumed to be within the jurisdiction of the juvenile divisions of county common pleas courts.

---

[3] *See Department of Public Welfare v. Harambee, Inc.*, 21 Pa. Commonwealth Ct. 430, 346 A.2d 594 (1975).

This argument is persuasive and is essentially dispositive, as a threshold matter, of this case. While a caseworker at CYSD (or any other such youth agency) may make an initial recommendation regarding the ultimate disposition of a foster child, that recommendation is clearly *not* a final order or adjudication and is always subject to the approval of the court. The Juvenile Act[4] we note, empowers the juvenile division of the court to order the transfer of legal custody of a dependent child to a foster home or public welfare facility. 42 Pa. C. S. §6351(a). That same act, notably, has as a pervasive aspiration the provision of "means by [which] the parties are assured a fair hearing and [by which] their constitutional and other legal rights are recognized and enforced." *Id*. §6301(b)(4). It is in *this* forum, then, that the agency's placement goal may be challenged. This has been passively recognized by the Superior Court, *see In re Adoption of Chrystal D.R.*, 331 Pa. Superior Ct. 501, 512, 480 A.2d 1146, 1152 (1984) (dicta), and is, indeed, taken for granted by the regulations governing DPW's child-placement responsibilities. *See* 55 Pa. Code §3130.72:

> (a) For each child in placement . . . for whom the county has been granted temporary legal custody under the Juvenile Act . . . *the county agency shall petition the court to conduct a dispositional review* hearing at the same time the county agency petitions the court to conduct a placement review. . . .
>
> (b) A petition for dispositional review must request *the court* to determine whether the child should be:
>
> > (1) Returned to the parents;

---

[4] 42 Pa. C. S. §§6301-6365.

(2)  Continued in foster care for a specified period;

(3)  *Placed for adoption;* or

(4)  Because of the child's special needs or circumstances, continued in foster care on a permanent or long-term basis.

*Id.* (emphasis added).[5]

Because it is within the realm of the juvenile court to resolve the propriety of a dispositional/placement goal established by a county youth agency, we conclude that DPW properly dismissed the appeal from the simple *establishment* of that goal by the agency. DPW has the power to direct that goals be established, but the court is the forum in which those goals may be disputed and are ultimately adjudged.[6]

---

[5] We note, however, that juvenile court jurisdiction to review a youth agency's intention to place a child for adoption is not *dependent* upon the regulation cited in the accompanying text. Rather, as stated, the regulation was merely formulated in *recognition* of the statutory power of such courts to effect such review.

[6] Necessarily concomitant with the conclusion that juvenile court has jurisdiction over disputes concerning placement goals is our stated conviction that a caseworker's simple recommendation of the goal is not a final order or adjudication and hence presumptively not an appealable action. A misconceived or otherwise disputed goal, rather clearly, may be overthrown or approved by juvenile court, and it is *that* action which is properly viewed as appealable.

We note in addition, however, that even were the juvenile court to approve adoption as the placement goal for a child, the parent would *still* have protection when termination proceedings commenced in Orphans' Court. That division of the common pleas court has, of course, jurisdiction over such matters, *see* 23 Pa. C. S. §2301, and a parent resisting an involuntary termination of parental rights may always contest an involuntary termination or the adoption of her children in that court. *See, e.g., Matter of Adoption of Baby Boy Allen,* 337 Pa. Super. 133, 486 A.2d 517 (1984) (natural father contested adoption of son in common pleas court). This latter fact buttresses our view in this case that the caseworker's service-

## 2. *Import of the Regulation*

Although we conclude that the common pleas court has jurisdiction over disputes with respect to placement goals, an issue as to the import of the appeal regulation

---

plan recommendation of a placement goal does not have such a final effect upon an individual's rights that an appeal is necessarily merited.

A further issue demands attention. Petitioner advises this Court that a termination petition *brought* by CYSD was dismissed in the Orphans' Court division of the Northampton County Court of Common Pleas on October 30, 1985, some three months before the OHA order dismissing the petitioner's appeal. It might be thought, because of that dismissal (although petitioner does not so argue, of course), that the appeal was moot both at that stage and in this Court—if a termination petition brought *pursuant* to the placement goal of adoption was unsuccessful, it might be thought appropriate for the agency to automatically *abandon* the goal of adoption and establish some *other* objective for the children.

We are not, however, advised that CYSD undertook to establish a new goal, nor do we believe that it was obliged to. First, of course, the dismissal may simply have been based on a procedural problem, with the Orphans' Court judge thus not rendering *any* judgment on the merits with respect to the propriety of termination of parental rights. Even if a judgment against termination *was* made on the merits, however, the facts which led to such determination could well change and the judgment would not be *res judicata* with respect to another attempt to terminate parental rights. Consequently, CYSD could be acting well within its discretion in *maintaining* as a goal *adoption,* notwithstanding temporary lack of success with that goal in Orphans' Court.

Moreover—and as a fundamental matter—it is to be recalled that adjudication of the propriety of the placement goal is in the *juvenile court* division of the court, not the Orphans' Court division. An Orphans' Court judge may certainly refuse to grant a termination petition brought pursuant to a placement goal, but the goal itself may be subject to scrutiny in juvenile court.

In summary, we have not been presented with any facts demonstrating that the issue in the present case has been mooted, nor are such facts apparent to us which by implication would compel such a conclusion.

remains. The entire premise of petitioner's appeal is, indeed, that it is inconsistent for DPW to exercise review powers over the *components* of the service plan yet to deny the existence of such power as to the goal itself. We believe that the foregoing discussion resolves the issue—review of such goals is the task of the juvenile court, and it is that forum in which the parent may appear and challenge the goal.

A more complete answer to petitioner's regulation-based argument, however, rests in acknowledgment of DPW's at once considerable yet ultimately noncomprehensive role in the lives of county youth agencies. As is clear from the discussion in the first part of this opinion, county juvenile courts have broad powers, stemming directly from statute, over the handling and final disposition of children in foster care. This has been the traditional role of such courts. As the state agency charged with the disbursal of federal funds to youth agencies, however, it has devolved upon *DPW* to enact regulations ensuring that certain administrative responsibilities assigned to the agencies—as prerequisites to receipt of federal funds—are satisfied. It was this federal action which led DPW to establish the regimen of regulation-based goals, service plans and placement reviews discussed above.[7]

---

[7] The parties are correct when they agree that the regulations involved are based upon "the requirements of federal law and federal regulations inplementing the Child Welfare and Adoption Assistance Act of 1980[, Pub. L. 96-272]." *Brief for Respondent* at 3; *Brief for Petitioner* at 13. That legislation has correctly been identified as including a "condition on state participation in a federal cooperative program":

[T]he plain language and the legislative history of [42 U.S.C. §671(a)(16)] indicates that Congress intended to impose on the states, as a condition of receipt of federal IV-E [foster care and adoption assistance] funds, an obligation to provide each AFDC-FC child a case plan meeting

Under the involved regulations, which establish a comprehensive case planning and case management scheme, the agency must, among other things, establish the placement goal for the dependent child, 55 Pa. Code §3130.67(5); establish a "family service plan" detailing "the services to be provided to achieve the objectives of the plan," *id.*, §3130.61(4); conduct six-month reviews of family service plans, *id.*, §3130.63; and petition the juvenile court, at six-month intervals, for "placement review," which entails, chiefly, consideration by the court of whether continued placement is necessary and whether the service plan has met with compliance. *Id.*, §3130.71. In addition, as discussed earlier, the agency must also petition the court for review of the proposed goal. *Id.* §3130.72. This scheme is mandated, as suggested above, by the federal government as a prerequisite for the commonwealth's receipt of federal funds for foster care, *see Lynch v. King*, 550 F. Supp. 325, 343 (D. Mass. 1982), and reflects a congressional concern that states were not effectively monitoring the status of children in foster care. *See id.* at 345 ("Congress recognized that the existence of unmanageable caseloads was responsible for many of the problems for which the 1980 Act is an intended cure."). *Compare In re Adoption of Chrystal D.R.*, 331 Pa. Super. 501, 513, 480 A.2d 1146, 1153 (1984) ("The purposes of these periodic reviews is to reduce the number of children in placement . . . and 'ensure for each child . . . a permanent, legally assured family which protects the child from abuse or neglect'[.]").

---

the criteria of [42 U.S.C. §675(1)] and a case review fulfilling the requirements of [42 U.S.C. §675(5)(B)].
*Lynch v. King*, 550 F. Supp. 325, 343 (D. Mass. 1982) (concluding that private cause of action was available against states under Act to enforce case plan/case review requirements).

An important facet of this remedial scheme is the provision of *services* to the family in connection with the ultimate placement goal. Federal regulations, indeed, require that a hearing be held whenever a parent challenges the level or manner of administration of such services.[8] In *this* realm, we note, there *is no* statutory preemption of DPW review by the juvenile court when such services are affected by youth agency decision-making. *See* 42 Pa. C. S. §§6301-6365. We thus find it entirely appropriate that the "parent appeals and fair hearings" regulation provides for appeals to *DPW* from decisions concerning *services,* with juvenile court left in its traditional role as the forum for review and adjudication of the goal itself. This scheme satisfies the strictures of the federal funds-conditioning, respects the statutory role of the common pleas court, and provides a forum in which disputes over placement goals may be resolved.

## 3. *Conclusion*

The foregoing, we believe, fully explains the limited character of the appeals regulation and refutes the premise of petitioner's appeal. And, because we have also concluded as a threshold matter that juvenile court possesses jurisdiction over disputes concerning placement goals, OHA was correct in construing the regulation narrowly and dismissing petitioner's appeal.

Affirmed.

### ORDER

Now, March 25, 1987, the Order of the Department of Public Welfare dismissing the Appeal of Petitioner, Rose Conklin, is hereby affirmed.

Senior Judge KALISH concurs in the result only.

---

[8] *See* 45 C.F.R. §205.10(5), (12).