565 A.2d 804

In re In the Interest of M.B., K.B.,
J.B., L.B., Minors.

**Appeal of L.B., Mother.**

Superior Court of Pennsylvania.

Argued Aug. 17, 1989.
Filed Nov. 3, 1989.

Ann G. Torregrossa, Chester, for appellant.

Roger R. Ullman, Swarthmore, for appellees.

George Koudelis, Upper Darby, for Children and Youth Services, participating party.

Before WIEAND, BECK and MONTGOMERY, JJ.

BECK, Judge:

This case raises two issues: 1. whether an appeal will lie from an order of the juvenile court granting Children and Youth Services permission to change its goal regarding four dependent children from reunification with their mother to adoption; and 2. whether the juvenile court erred in approving the change of goal.

Appellant, L.B., is the mother of four children who have been adjudicated dependent and placed in foster care by Children and Youth Services of Delaware County (CYS). CYS has legal custody of the children. Throughout the history of CYS' involvement with the children, the goal of CYS' services had always been identified as returning the children to their own home.[1]

By order dated August 10, 1988, the trial court granted the request of CYS to change its goal for the children from reunification with their mother to adoption. The trial court order specifically provided: (1) that the children remain in foster care; (2) that legal and physical custody of the

---

1. As to three of the children, i.e. those that had been in foster care since 1984, CYS stated the goal as being "decision on permanent plan/return home". The apparent meaning of this statement of the goal was that CYS would attempt to enable the children to return home and, failing that, develop an alternative approach to the final disposition of the children. As to the fourth child, who was not adjudicated dependent until 1987, the goal was simply "return home".

custody of the children remain with CYS; (3) that CYS be permitted to change the goal of its plan for the children to adoption; (4) that appellant cooperate with CYS by meeting regularly with social workers, giving them access to her home, visiting regularly with her children and participating in family therapy as directed by CYS; (5) that CYS and Jewish Family and Children's Service be permitted to release pertinent information regarding the family to all treating professionals; and (6) that a court review be scheduled within (6) months or sooner at the request of any party. This appeal followed.

■ Initially, we address the motion of CYS to quash this appeal as interlocutory based upon the assertion that an order changing the goal of CYS regarding dependent children from reunification to adoption is not final and appealable. We find that the order is a final order appealable under 42 Pa.C.S.A. § 742 (1978). As the Supreme Court stated in *Fried v. Fried*, 509 Pa. 89, 501 A.2d 211 (1985):

It is axiomatic that an appeal will lie only from a final order unless otherwise permitted by statute or rule.

In *T.C.R. Realty, Inc., supra,* [*T.C.R. Realty, Inc. v. Cox*, 472 Pa. 331, 372 A.2d 721 (1977)] we stated:

We have variously defined a final order as one which ends the litigation, or alternatively disposes of the entire case. *Piltzer v. Independence Savings and Loan Association*, 456 Pa. 402, 404, 319 A.2d 677, 678 (1974); *James Banda Inc. v. Virginia Manor Apartments, Inc.*, 451 Pa. 408, 409, 303 A.2d 925, 926 (1973). Conversely phrased, an order is interlocutory and not final unless it effectively puts the litigant "out of court". *Ventura v. Skylark Motel, Inc.*, 431 Pa. 459, 463, 246 A.2d 353, 355 (1968). In *Marino Estate*, 440 Pa. 492, 292 [sic], 269 A.2d 645, 646 (1969), we said that an order is not interlocutory if it precludes a party from presenting the merits of his claim to the lower court.

*Id.*, 509 Pa. at 93, 501 A.2d at 213 (citations omitted).

■ The determination of finality is not to be made merely by ascertaining whether the order in question has

technically ended the litigation between the parties. We must examine the practical consequences of the order to determine if the party challenging it has effectively been put out of court. *See Ventura v. Skylark Motel, Inc., supra; Marino Estate, supra.*

Ascertaining the practical significance of the order under review requires that we examine it in the context of the statutory and regulatory scheme governing disposition of dependent children. The Juvenile Act, 42 Pa.C.S.A. § 6301 et seq. (1982) (the "Act"), and various Department of Public Welfare regulations contain this scheme. The Act permits the trial court to determine whether a child is dependent within the Act's definition of that term. *Id.* § 6341. Once the dependency determination is made, the Act then permits the court to make one of a number of initial dispositions of the child. The permissible alternatives include permitting the child to remain with his parents under conditions prescribed by the court or transferring temporary custody of the child to a private or public agency. *Id.* § 6351. The Act then provides for periodic disposition review hearings. At these hearings, the court is directed to:

(1) determine the continuing necessity for and appropriateness of the placement;

(2) determine the extent of compliance with the service plan developed for the child;

(3) determine the extent of progress made toward alleviating the circumstances which necessitated the original placement;

(4) determine the appropriateness and feasibility of the current placement goal for the child;  and

(5) project a likely date by which the goal for the child might be achieved.

*Id.*

The court must then further determine what disposition of the child should be ordered as a result of the foregoing review. The court must:

(1) determine whether the child:

(i) should be returned to the parents, guardian or other custodian;

(ii) should be continued in placement for a specified period; or

(iii) because of the child's special needs or circumstances, should remain in placement on a permanent or long-term basis; and

(2) order continuation, modification or termination of placement or other disposition best suited to the protection and physical, mental and moral welfare of the child.

*Id.*

The foregoing statutory section refers to the "service plan" and "goal" established for the dependent child. These references relate to the "family service plan" that county children and youth service agencies are required to formulate for dependent children receiving services from the agency. 55 Pa.Code § 3130.61 (1987). This, of course, includes children as to whom the county agency has been awarded legal custody and who are in foster care. *See* 55 Pa.Code § 3130.5 (1987).

The initial plan is to contain pertinent information concerning the child, his/her family, the circumstances giving rise to the present situation, the services to be provided the family and the objectives of those services. 55 Pa.Code § 3130.61. Except in situations requiring emergency placement, prior to placing a child in foster care the agency must identify an ultimate goal for the child being placed. The permissible goals are:

(i) return to own home

(ii) placement in the home of another relative

(iii) adoption

(iv) placement with legal guardian

(v) independent living

(vi) long-term placement

*Id.* § 3130.67.

Where a return to the child's own home, or reunification of the family, is the goal, CYS provides "reunification

services". The Department of Public Welfare's regulations define such services, including services aimed at avoiding foster care placement in the first place, as follows:

> (1) Counseling service. Supportive and therapeutic activities provided to a child or a child's family and directed at preventing or alleviating conditions, including crisis conditions, which present a risk to the safety or well-being of the child by improving problem-solving and coping skills, interpersonal functioning, the stability of the family, or the capacity of the family to function independently.
> (2) Parent education. Practical education and training for parents in child care, child development, parent-child relationships and the experience and responsibilities of parenthood.
> (3) Homemaker/caretaker service. Home help, home care skills instruction and/or child care and supervision provided to a child and the child's family in the child's home by a trained homemaker or caretaker.
> (4) Part day service. Care and supervision for a child for less than 24 hours per day provided under a family service plan to enable the child to remain in or return to the child's own home.

*Id.* § 3130.35.

Thus, the importance of the service plan and the goal it identifies for the child involved cannot be overemphasized. As was recently noted in an article appearing in the *Children's Rights Chronicle*, produced by the Juvenile Law Center:

> ... the family service plan is the key to the dependency process. It provides a social work tool which spells out a goal and everyone's tasks in reaching toward that goal. All parties to the plan should participate in its formation so that they understand the problems facing the family and also understand what is expected of them to remedy those problems.
>
> By documenting what the parents, agency and other players in the process need to do, the FSP [the plan] is also legally valuable when efforts fail to reunify a family.

... the lawyers should elicit testimony so that the court sees a parent's performance in reference to the guidelines spelled out through the FSP tasks. The court can thus determine when efforts toward reunification have been made but because of repeated lack of cooperation or failure, the necessary tasks cannot be performed and the goal should be abandoned.

Remarks of Sam Magdovitz of Juvenile Law Center, reprinted in *Children's Rights Chronicle*, Volume Six, No. 3, at 1 (1987–88).

As this article and the Act itself make clear, there is a clear interaction between the role of CYS first in formulating and then in implementing the plan through the provision of services, the role of the parents in cooperating with CYS in receiving and benefiting from those services, and the role of the court in assessing whether there has been compliance with the plan and in determining the progress that has been made under it and whether the current goal continues to be appropriate. This interaction is most clear in the situation where the court is faced with the decision as to whether the goal as to a particular family must be changed from reunification to adoption. Here, pursuant to the Act, the court must carefully assess what the plan called for the parties to do, including what services CYS was required to provide, whether those services have in fact been provided, what results have been achieved, and, finally, whether the court should direct that efforts to achieve the present goal be continued or that a radical change be made so that efforts to reunify can be abandoned and adoption efforts begun.

Thus, the decision to allow CYS to change the service plan goal from reunification to adoption is not merely a minor decision permitting a slight shift in the emphasis of CYS' social services. As a practical and legal matter, an order by the juvenile court changing the child's placement goal from reunification to adoption ends any dispute that may exist between CYS and the parent as to the adequacy of CYS's services aimed at reuniting the parent with his/her children and, of course, as to whether CYS has

selected the most appropriate goal for this family. By allowing CYS to change its goal to adoption, the trial court has decided that CYS has provided adequate services to the parent but that he/she is nonetheless incapable of caring for the child and that, therefore, adoption is now the favored disposition. In other words, the trial court order is the decision that allows CYS to give up on the parent. As such, it is a final order from which the parent has an immediate right of appeal.

The question of the finality of an order changing a service plan's goal to adoption has not directly been addressed in this Commonwealth. However, this question was addressed by the Commonwealth Court in dictum in *Conklin v. Commonwealth*, 105 Pa.Commw. 84, 522 A.2d 1207 (1987). The *Conklin* Court concluded, as we do, that such an order would be a final order.

The precise issue presented in *Conklin* was whether the initial recommendation by a CYS caseworker that a child's placement goal be changed to adoption was appealable to the Department of Public Welfare Office of Hearings and Appeals under the Department's regulations. The court found that although DPW had the power to direct that the county agency establish a goal for the child, it was the juvenile division of the county court of common pleas that had sole jurisdiction to determine the propriety of that goal. Therefore, the court held that the caseworker's decision "is clearly *not* a final order ... [because it is] subject to the approval of the [Juvenile] Court." *Id.*, 105 Pa.Commw. at 89, 522 A.2d at 1210. Significantly, however, the *Conklin* court indicated that the decision of the juvenile court approving or disapproving the caseworker's recommendation as to changing the goal *would be* an appealable final order. The Court said:

A misconceived or otherwise disputed goal, rather clearly, may be overthrown or approved by juvenile court, and it is *that* action which is properly viewed as appealable.

*Conklin*, 105 Pa.Commw. at 90 n. 6, 522 A.2d at 1210 n. 6. (emphasis in original).

This conclusion is not affected by the fact that the order involved herein also directed that a further review of the case be undertaken in six months or earlier at the request of any party. In *In Interest of C.A.M.*, 264 Pa.Super. 300, 399 A.2d 786 (1979), a panel of the Superior Court noted that under the Juvenile Act, an adjudication of dependency becomes a final order only after the disposition has been completed. The panel stated:

> The procedure contemplated by the statute included two steps. The first step was aimed at a determination of whether the child was dependent. If this issue were decided affirmatively, a second step then became necessary to determine final disposition. *That disposition could permit the child to remain with his or her parents subject to conditions, or it could transfer custody elsewhere* ... Until the second hearing had been held and a final disposition made, the litigation was not ended, and placement of the child had not been determined. A finding of dependency, therefore, was interlocutory.

264 Pa.Super. at 302, 399 A.2d at 787 (emphasis added). *See also In the Interest of S.A.D.*, 382 Pa.Super. 166, 555 A.2d 123 (1989) (decision to place child in foster care with future hearing scheduled to review that determination held final and appealable); *In re A.M.*, 365 Pa.Super. 516, 530 A.2d 430 (1987) (adopting reasoning in *C.A.M.*). Thus, in the context of dependency, this court acknowledges certain crucial points of finality when review is appropriate despite the fact that such determinations may later be modified by the trial court after further statutorily mandated review hearings are held. 42 Pa.C.S.A. § 6531(e) (requiring periodic disposition review hearings).

The fact that the trial court may later reconsider its order and change the service plan goal back to reunification does not undercut the immediate effect of this order. While this order is in effect, appellant will not receive the wide array of services that CYS must provide to a family where reunification is the goal and which, in this case, CYS has in fact

been providing appellant.[2] The effect of such a deprivation of services on a parent can only be to exacerbate his/her existing difficulties in parenting. Thus, the order has an immediate and detrimental effect on the parent.

In the instant case CYS argues that the juvenile court's approval of the adoption goal cannot be considered final because appellant will be able to challenge the adoption goal in the Orphans' Court in the event that CYS brings an action to terminate parental rights. We find no merit in this argument. In a termination proceeding the focus of the Orphans' Court proceeding will be whether CYS has satisfactorily borne the burden of showing that the statutory requirements for termination have been met. Pa.Stat. Ann. tit. 23, § 2511 (Supp.1989). The Orphans' Court will not review the proceedings before the juvenile court to change the service plan goal as that will not be the issue before it. Furthermore, since this case arises from Delaware County, the Orphans' Court does not have jurisdiction to review the juvenile court's determination as to a change in the plan. Except in Philadelphia and Allegheny County, under the Juvenile Act jurisdiction to determine the propriety of the placement goal is vested exclusively in the juvenile division of the court of common pleas. 42 Pa.C.S.A. § 6302 and official comment thereto. The jurisdiction of the Orphans' Court is to terminate parental rights and is derived from a different statute. Pa.Stat.Ann. tit. 23, § 2102 and official comment thereto. Thus, the issues and proceedings

---

**2.** We recognize that the order under review does direct that appellant cooperate with CYS by participating in individual or family therapy as requested by CYS. This, of course, does not mean that appellant will continue to receive the variety of services that she had received through CYS when reunification was still the identified goal. As CYS has strenuously argued in support of changing the goal to adoption, and as the record in fact reveals, appellant has for several years received the types of reunification services listed in 55 Pa.Code 3130.-35, reprinted above. The services have included intensive in-home assistance as well as mental health therapy. It is this level of services that may be discontinued if the goal of reunification is abandoned. Indeed, under a literal reading of the instant order, CYS need provide even the individual or family therapy that the order mentions only if it so desires. The order does not mandate a continuation even of this service to appellant.

before the juvenile court, on one hand, and the Orphans' Court on the other, are distinct.

In *Conklin, supra,* the Commonwealth Court recognized these distinct functions of the proceedings under the Juvenile Act and under the Adoption Act. There, the Orphans' Court had refused to terminate parental rights, but the adoption goal was left standing. The Court said:

> [I]f a termination petition [in Orphans' Court] brought *pursuant* to the placement goal of adoption was unsuccessful, it might be thought appropriate for the agency to automatically *abandon* the goal of adoption and establish some *other* objective for the children.
>
> We are not, however, advised that CYSD undertook to establish a new goal, nor do we believe that it was obliged to [do so].
>
>  . . . .
>
> Consequently, CYSD could be acting well within its discretion in *maintaining* as a goal *adoption,* notwithstanding temporary lack of success with that goal in Orphans' Court.
>
>  . . . .
>
> Moreover—and as a fundamental matter—it is to be recalled that adjudication of the propriety of the placement goal is in the *juvenile court* division of the court, not the Orphans' Court division. An Orphans' Court judge may certainly refuse to grant a termination petition brought pursuant to a placement goal, but the goal itself may be subject to scrutiny in juvenile court.

*Conklin,* 105 Pa.Commw. at 91 n. 6, 522 A.2d at 1211 n. 6.

Accordingly, since the propriety of the adoption goal and the propriety of terminating parental rights are treated as separate and different matters, the order of the juvenile court "ends the litigation" on the service plan goal.

Moreover, even if a termination of parental rights proceeding would include a determination of the propriety of

the service plan goal, we would nevertheless not deny appellant her right to appeal the instant order. When and whether CYS initiates termination proceedings is in its discretion. To deny this appeal could, therefore, leave appellant without services to which she might be entitled for an extended period of time.

Our decision that the subject order is final and immediately appealable fosters the public policies that underlie the Juvenile Act. One of the primary purposes of the Juvenile Act is to preserve the unity of the family whenever possible. 42 Pa.C.S.A. § 6302; *Fallaro v. Yeager*, 364 Pa.Super. 408, 528 A.2d 222 (1987); *In Interest of Ryan Michael C.*, 294 Pa.Super. 417, 419, 440 A.2d 535, 536–37 (1982). *See also In the Interest of S.A.D.*, 382 Pa.Super. at 171–74, 555 A.2d at 126–27 (both state and federal law require that reasonable efforts be made by CYS to prevent placement in foster care and to return a child in foster care to its own home; *citing, inter alia*, 42 U.S.C. § 671(a)(15) (1986)). To hold that the juvenile court's approval of the adoption goal is not final and appealable would frustrate the purposes of the Juvenile Act by preventing review of a trial court decision declaring that in this case, the goal of reuniting this family cannot be achieved and, therefore, adoption is the suitable course for the children in question. *Id.* Moreover, it would shield from appellate review the trial court's conclusions as to whether CYS was properly performing its duty to provide reunification services.

■ Since we conclude that the instant order is final and immediately appealable, we turn to a consideration of the substantive issues raised by appellant. These issues are: (1) whether the juvenile court erred in permitting CYS to change its goal to adoption where CYS failed to comply with state regulations requiring it to make efforts to reunite the family before seeking adoption as a goal; (2) whether appellant's fourteenth amendment due process rights were violated when the court placed the burden on her to obtain parenting education services and to prove that she could adequately parent her children where CYS de-

prived her of the opportunity to demonstrate her parental capabilities; and (3) whether the court abused its discretion in permitting CYS to change its goal to adoption without considering long term foster care of the children as an alternative to adoption.

The trial court sets forth at length the history of appellant vis-a-vis her children and her contact with CYS. Contrary to appellant's assertions that CYS has thwarted her attempts to improve her situation with the goal of reuniting her family, the trial court found that appellant seems incapable of "mastering the simple, basic skills of parenting" despite the efforts of CYS to promote appellant's development of such skills. In addition, the court found unpersuasive the testimony of appellant's friend and boyfriend regarding the extent to which they could assist appellant in establishing and maintaining an acceptable environment in which to raise her children.

Based upon our review of the record in this case, we find that the opinion of the trial court adequately sets forth the reasons for its decision to permit CYS to change the goal for appellant's children from reunification to adoption and that those reasons fully support the conclusion that the goal should be changed.

Order affirmed.