**In the Matter of J.S., Adjudicated Dependent.**

**Appeal of Angela Lawrie, Natural Mother.**

Superior Court of Pennsylvania.

Submitted Oct. 1, 2001.

Filed Dec. 18, 2001.

Anthony A. Logue, Erie, for appellant.

Deanna L. Heasley, Erie, for J.S., appellee.

James E. Beveridge, Erie, for Erie County Children and Youth Services, appellee.

BEFORE: HUDOCK, JOYCE, and LALLY–GREEN, JJ.

LALLY–GREEN, J.:

¶ 1 Appellant, Angela Lawrie, appeals from the order entered on February 26, 2001. We quash the appeal.

¶ 2 The trial court set forth the unusual procedural and factual history of the case as follows:

The Erie County Office of Children and Youth (OCY), acting on a request from Angela Lawrie, filed a petition seeking to adjudicate [J.S.], date of birth February 11, 1984, a dependent child under the Juvenile Act. Angela Lawrie is the natural mother of J.S. The child's biological father is deceased. The mother is now married to Duncan Lawrie.

The Dependency Petition averred the mother was unable to control [J.S.]'s behaviors. A host of mental health services were provided for the child in the mother's home, although the mother "only marginally cooperated with these services." See Dependency Petition. On January 14, 1998, the Millcreek police were summoned to the mother's home to help restrain the child. On January 16, 1998, the mother did not want the child to return home after school and thereafter voluntarily placed [J.S.] in foster care. Notably, the Dependency Petition avers "[J.S.] remains in placement where he has not had any outbursts."

A combined Detention and Adjudication Hearing was held in front of a Master on February 5, 1998. At the hearing, all parties stipulated to the

facts set forth in the Dependency Petition and [J.S.] was formally adjudicated dependent on February 5, 1998.

From January 16, 1998 until December 11, 1998, [J.S.] resided in the Paprocki Foster Home. Since December 18, 1998, [J.S.] has resided in the foster home of Richard and Betty Davis. [J.S.] has received services through the Mental Retardation Base Service Unit. Specifically, the child had a mobile therapist and a resource case manager. [J.S.] enjoyed a good working relationship with his mobile therapist and overall was cooperative with all service providers.

A Permanency Hearing was held on February 26, 2001. The stated goal of placement remained "a legal custodian or other living arrangement intended to be permanent in nature...." See Court Summary, February 26, 2001, pg. 3. Despite [J.S.] having been in placement for over thirty-seven months preceding the Permanency Hearing, there were compelling reasons for not filing for the termination of parental rights essentially based on the relationship/bond between the mother and child.

As a result of the hearing on February 26, 2001, the permanency goal remained the same, to-wit a legal guardian or other living arrangement permanent in nature. At the conclusion of the hearing, the record reflects the direction from the Court to begin a process for the eventual return of the child to the mother. However, no return of the child to the mother was ordered to take effect prior to the next Permanency Review Hearing.

On or about March 20, 2001, Angela Lawrie filed a Notice of Appeal from the Order of February 26, 2001.

Trial Court Opinion, 5/23/01, at 1–3.

¶ 3 Appellant raises three issues on appeal:

I. Whether the court abused its discretion and thus erred in ordering that the child be returned home to the natural mother by the next Permanency Hearing and thus said child will be without proper parental care, control and supervision?

II. Whether the court abused its discretion and thus erred in ordering the minor child to be returned home, where the court has disregarded the safety of the natural mother and minor female sibling?

III. Whether the court abused its discretion and thus erred where it changed the placement goal and ordered that the minor child be returned to the mother's home which effectively terminates a structured environment in which the dependent child benefits and is thriving under?

Appellant's Brief at 16.

¶ 4 Before addressing any of Appellant's issues, we must first understand the nature of the trial court's February 26, 2001 order. Appellant contends that the court ordered J.S. to be returned to her home within six months (*i.e.*, by the time of the next Permanency Hearing). Indeed, all of Appellant's arguments on appeal are premised on this assumption. The court explained at length, however, that it did not issue such an order. Rather, according to the court: (1) the permanency goal remained the same; (2) the court did not order J.S. to be returned to Appellant's custody within six months; and (3) the purpose of the order was to retain the status quo. Trial Court Opinion, 5/23/01, at 2–4. The court did acknowledge that it planned to increase visitation between Appellant and J.S. in anticipation of an **eventual** reunion of mother and child, but that such a change of goal would not take place,

if at all, until after the next Permanency Hearing. *Id.* at 4. The court concluded that the February 26, 2001 order was interlocutory and non-appealable because it did not change the placement goal or order a change in custody. *Id.*

¶ 5 We agree with the trial court. Generally, a change of placement goal is appealable. *In re: C.J.R.,* 2001 PA Super 237 at ¶ 5, 782 A.2d 568; *In re: M.B.,* 388 Pa.Super. 381, 565 A.2d 804, 810 (1989), *appeal denied,* 527 Pa. 601, 602, 589 A.2d 692 (1990). On the other hand, Appellant cites, and we have found, no authority for the proposition that an order which retains the status quo is appealable.

¶ 6 After reviewing the order, we conclude that it is not a final order under Pa.R.A.P. 341(b). First, it does not dispose of all claims and all parties. Second, it is not expressly defined as a final order by statute. Third, it was not entered as a final order under Pa.R.A.P. 341(c). The order does not fall under any of the categories of interlocutory appeals as of right under Pa.R.A.P. 311, is not an interlocutory appeal by permission under Pa.R.A.P. 312, and is not a collateral order under Pa.R.A.P. 313 in part because the order is not "separable from and collateral to the main cause of action." As such, the appeal from the order is quashed.[1]

¶ 7 Appeal quashed.

---

1. We recognize that certain inartfully-drafted language within the February 26, 2001 order may have suggested that the order imposed a goal change. For example, the final paragraph of the order states: "In the interest of establishing a more definite permanency plan for [J.S.], the Court directs that the unsupervised visits be increased with the goal of a return home within the next six months." The trial court apparently meant to say that, "In the interest of establishing a more definite permanency plan for J.S., the Court directs that within the next six months the unsupervised visits be increased with the eventual goal of a return home." Nevertheless, the trial court's May 23, 2001 opinion explicitly clarified that a goal change was not intended.