J-S35002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3534 EDA 2019 |

Appeal from the Order Entered November 22, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0002683-2018

BEFORE:   BOWES, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 25, 2020**

A.W. ("Mother") appeals from the juvenile court order[1] terminating court

supervision of her daughter, A.M.W., and discharging the dependency petition

filed by the Philadelphia Department of Human Services ("DHS").  We affirm.

A.M.W. was born in December 2016.  DHS became involved with the

family on November 14, 2018, after it received a child protective services

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] While dated November 21, 2019, the order, as amended, was not entered for purposes of Pa.R.C.P. 236(b) until November 22, 2019, upon the docketing of notice.  **See Frazier v. City of Philadelphia**, 735 A.2d 113, 115 (Pa. 1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given"); **see also** Pa.R.A.P. 108(a) (entry of an order is designated as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)".).

("CPS") report involving A.M.W. and her sibling, E.W.[2]  The report alleged, *inter alia*, physical child abuse, neglect due to A.M.W.'s ingestion of Adderall or Percocet, illegal drug-related activity in the household, and unsecured firearms.[3]  Thereafter, on November 28, 2018, police arrested Mother and her paramour, H.D., for several offenses related to the possession of a controlled substance with intent to manufacture or deliver.  On January 4, 2019, A.M.W. and E.W. were placed together with their maternal grandmother.  The ensuing safety plan suspended all unsupervised conduct with Mother.  On January 4, 2019, the juvenile court adjudicated A.M.W. dependent based, in part, upon Mother's agreement regarding her present inability to provide proper parental care or control of A.M.W.[4]  The court committed A.M.W. to the care and custody of DHS and placed him in kinship care with his maternal grandmother.

Although Father's location was initially unknown, he was found and appeared at a subsequent hearing scheduled for March 1, 2019.  Counsel was appointed, and Father was provided with reunification services.  He made

---

[2] E.W., who was additionally adjudicated dependent on January 4, 2019, was thereafter discharged to the maternal grandmother's custody on August 30, 2019.  E.W. is not the subject of this appeal.

[3] Following DHS investigation of the child abuse allegations, Mother and H.D. were indicated as perpetrators of abuse.

[4] Mother did not challenge the adjudication of A.M.W. as a dependent child.

substantial progress toward reunification and consistently attended visitations with A.M.W., with whom he shares a burgeoning parent-child bond.[5]

During the ensuing permanency review hearing on August 30, 2019, the court heard evidence to determine the continuing suitability of A.M.W.'s kinship placement, and her immediate physical, emotional, economic, medical, educational, developmental and social needs. In addition, the court considered Mother's proposed move with the maternal grandmother and A.M.W. to the Poconos in order to reunify without DHS supervision. Father presented evidence that he was prepared to reunify with A.M.W. immediately. After the hearing, the trial court determined that Father was fully compliant with the permanency plan and, because A.M.W. would reunify with Father immediately, kinship placement with the maternal grandmother was not necessary. Accordingly, by decree entered August 30, 2019, the court discharged the kinship placement and formally transferred legal custody and physical custody to Father with DHS supervision.[6] Mother did not appeal this order.

---

[5] Specifically, the evidence revealed that Father was in full compliance with his single case plan ("SCP") objectives, which included visitation, employment, keeping the agency updated on medical issues and his criminal case, and maintaining compliance with the trial court orders. *See* N.T., 8/30/19, at 11.

[6] In addition to the August 30, 2019 decree, the court entered a permanency review order on the same date.

Thereafter, on November 21, 2019, the court heard a permanency update regarding A.M.W.'s assimilation into Father's home since August 2019.[7] Satisfied with permanent placement with Father—a ready, willing and able parent—the court found that the circumstances which necessitated the dependency adjudication and initial placement had been alleviated as of November 21, 2019. Hence, the trial court dismissed DHS's supervision of A.M.W., and discharged the dependency petition. [8]

On December 19, 2019, Mother filed a *pro se* notice of appeal, although she was still represented by court-appointed counsel. *See S.C.B. v. J.S.B.*, 218 A.3d 905, 911 n.4 (Pa.Super. 2019) (*pro se* notice of appeal filed by represented individual are acceptable "because they protect the appellants' right to appeal as set forth in the Pennsylvania Constitution"). However, she failed to file a concise statement of errors complained of on appeal with her Children's Fast Track notice of appeal as required by the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P. 1925(a)(2)(i) ("The concise statement of errors complained of on appeal shall be filed and served with the notice of appeal."). This Court entered counsel's appearance on the appellate docket

---

[7] DHS presented the testimony of Michael Flanagan, the CUA supervisor from Turning Points for Children. He testified that A.M.W. was safe in Father's home, her needs being satisfied, and that there were no concerns with his ability to ensure A.M.W.'s safety. N.T., 11/21/19, at 5-6.

[8] The court issued an order of termination of court supervision dated and entered November 21, 2019. The court then issued an amended order dated November 21, 2019, and entered November 22, 2019, correcting the spelling of A.M.W.'s name and birthdate. Further, the court re-issued the custody decree dated August 30, 2019.

and forwarded counsel a copy of Mother's *pro se* appeal. On February 6, 2020, we directed counsel to file a Rule 1925 statement by February 18, 2020. As counsel complied with this Court's order, and there is no assertion of any prejudice, we do not quash or dismiss Mother's appeal. ***See In re: K.T.E.L.***, 983 A.2d 745 (Pa.Super. 2009) (failure to file Rule 1925(b) statement is considered defective notice of appeal and will not be dismissed since failure to file statement is violation of procedural rule and not an order of court); ***cf. Mudge v. Mudge,*** 6 A.3d 1031 (Pa.Super. 2011) and ***J.M.R. v. J.M.***, 1 A.3d 902 (Pa.Super. 2010) (failure to file Rule 1925(b) statement when ordered by Superior Court will result in waiver of all issues on appeal).

Mother raises the following issues for our review:

1. Did the trial court err as a matter of law and abuse its discretion when it found that it was in the best interest of the minor, A.M.W.[,] to award custody of A.M.W. to her father rather than keep her with her mother, brother and grandmother?

2. Did the trial court err as a matter of law or abuse its discretion where it made the decision to award custody of the minor, A.M.W.[,] to her father without holding an evidentiary hearing?

Mother's brief at 3.

The following legal principles inform our review:

In dependency proceedings our standard of review is broad. [***In Re C.J.***]*,* 729 A.2d 89 (Pa.Super. 1999). Nevertheless, we will accept those factual findings of the trial court that are supported by the record because the trial judge is in the best position to observe the witnesses and evaluate their credibility. We accord great weight to the trial judge's credibility determinations. "Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's

determination, as opposed to its findings of fact, and must order whatever right and justice dictate." [*Id.*] at 92.

*In re S.J.-L.*, 828 A.2d 352, 355 (Pa.Super. 2003) (cleaned up).

Mother asserts that the trial court erred in transferring physical and legal custody of A.M.W. to Father because it was contrary to the child's best interests, and she maintains that the trial court made the custody determinations in the absence of an evidentiary hearing. *See* Mother's brief at 3, 9-18. Prior to reaching the merits of Mother's claims, we first examine the contentions of both DHS and the guardian *ad litem* that, given that the substance of Mother's appeal challenges the trial court's award of custody of A.M.W. to Father, which the court ordered on August 30, 2019, Mother's appeal is untimely and should be quashed and/or dismissed. *See* DHS's brief at 11-12; GAL's brief at 13-14. Mother does not respond to these arguments, although she does acknowledge that the "the trial court moved the [c]hild from her grandmother's home to Father's home" via the August 30, 2019 permanency review order. Appellant's brief at 7.

Pursuant to Pennsylvania Rule of Appellate Procedure 903, "the notice of appeal required by Rule 902 . . . shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a); *see also* Pa.R.A.P. 108(b) ("The date of entry of an order . . . shall be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by [Pa.R.C.P.] 236(b)."). Further, it is well-settled that, "[a]n appeal lies only from a final order, unless permitted by rule or statute." *Stewart v. Foxworth*, 65 A.3d 468, 471 (Pa.Super. 2013); *see*

*also In the Interest of J.M.*, 219 A.3d 645, 650 (Pa.Super. 2019).

Generally, a final order is one that disposes of all claims and all parties. *See*

Pa.R.A.P. 341(b).

> In the context of dependency, we have further stated,
>
> "[D]ue to dependency's unique nature, the fact that further proceedings are contemplated is not dispositive of the finality of the order. *In the Interest of J.L.*, 216 A.3d 233, 2019 WL 3295100, at 3 n.1 (Pa.Super. 2019). In the dependency context, the court "must examine the practical consequences of the order to determine if the party challenging it has effectively been put out of court." *In re Interest of M.B.*, 388 Pa.Super. 381, 565 A.2d 804, 806 (1989).

*In the Interest of J.M.*, *supra* at 652. Moreover,

> Based upon the two-step procedure contemplated by the Juvenile Act for declaring a child dependent (i.e., an adjudication followed by a disposition, *see* 42 Pa.C.S. 6341(c)), this Court has held that it is the dispositional order following a dependency adjudication that is a final appealable order. *In the Interest of C.A.M.*, 264 Pa.Super. 300, 399 A.2d 786 (1979).

*Id*. at 651-52.

For purposes of Pa.R.A.P. 108(b), the order being appealed in this matter was entered on November 22, 2019. Accordingly, Mother had until Monday, December 23, 2019, to file a timely notice of appeal. As she filed the appeal on December 19, 2019, the instant appeal is timely.

However, notwithstanding the timeliness of her appeal, the arguments that Mother asserts herein are nonetheless waived because they relate to the

final order entered on August 30, 2019, which Mother neglected to appeal.[9]

Stated plainly, Mother's present attempt to challenge the propriety of the court's decision to transfer physical and legal custody of M.W. to Father is untimely and unreviewable because she failed to appeal the relevant order within thirty days of the date the order was entered. **See** Pa.R.C.P. 903(a); **Commonwealth v. Gemelli**, 474 A.2d 294, 300 (Pa.Super. 1984) (issue waived where Commonwealth failed to appeal appropriate order).

Assuming, *arguendo*, that the claim was not waived due to Mother's failure to appeal the August 30, 2019 order awarding physical and legal custody to Father, Mother's argument additionally lacks merit. Preliminarily, the certified record belies Mother's assertion that the court transferred custody without a hearing. In reality, the trial court held a permanency review hearing on August 30, 2019 before transferring physical and legal custody to Father pursuant to § 6357, which provides, in pertinent part: "The court may award legal custody under this section on a . . . permanent basis to an individual under section 6351(a)(2.1) [regarding the dependency disposition that is best

_____

[9] Although Mother suggests that the trial court transferred custody to Father on November 21, 2019, the certified record refutes this contention. **Compare** Mother's brief at 7, 9, **with** Permanency Review Order, 8/30/19; Custody Decree, 8/30/19. Indeed, in explaining its rationale for terminating court supervision on November 21, 2019, the court referred to the August 2019 custody transfer in the past tense, *i.e.*, "The child **has been reunified** with the Father and the circumstances which necessitated the dependency adjudication and placement have been alleviated." Trial Court Order, 11/21/19, at 1 (emphasis added).

suited to the safety, protection, and physical, mental, and moral welfare of the child]." Mother attended that hearing and was represented by counsel. She testified, as did the CUA case manager, Ms. Arnold.[10] Further, at the subsequent hearing on November 21, 2019, where the court terminated its supervision and discharged the dependency petition, DHS presented additional testimony from CUA supervisor, Michael Flanagan, who testified that A.M.W. was thriving in Father's custody. Mother declined to present any evidence at that hearing, she simply requested permission to transport A.M.W. to and from their visitations. *See* Trial Court Opinion, 4/20/20, at Exhibit D; N.T., 11/21/19, at 7. As the certified record contradicts Mother's assertion that the juvenile trial court transferred custody to Father without a hearing, no relief would be due even in the absence of waiver.

Moreover, as indicated above, the transfer of custody, the termination of court supervision, and the dismissal of the dependency proceedings all served the best interests of A.M.W. Once the trial court placed A.M.W. in the custody of Father, a ready, willing, and able parent, A.M.W. was no longer dependent child pursuant to 42 Pa.C.S. § 6302 (defining dependent child as,

_____

[10] Likewise, had Mother preserved the related assertion that the juvenile court's decision to place A.M.W. with Father violated the Child Custody Law, that claim would fail because the juvenile court was specifically authorized to grant permanent custody to Father pursuant to section 6351(a)(2.1), as the disposition that was "best suited to the safety, protection and physical, mental, and moral welfare of the child[.]" *See* 42 Pa.C.S. § 6351 ("Disposition of dependent child."). However, as the trial court also indicated, Mother maintains the ability to file in the Family Division a petition to modify custody pursuant to 23 Pa.C.S. § 5338(a), which unlike the instant juvenile court order, would be controlled by the Child Custody Law.

*inter alia*, "[a] child who: (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals."). Hence, had this issue been preserved, we would still discern no abuse of discretion.

In sum, because Mother failed to present any legal argument challenging the juvenile court's November 21, 2019 order terminating court supervision and dismissing the dependency petition, and we do not otherwise discern an abuse of discretion in the court's decision, we do not disturb it.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/25/20