J-S12003-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.P.-I., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.P., MOTHER | : : : : : : : | |
| | : | No. 50 EDA 2022 |

Appeal from the Order Entered December 14, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001196-2021

BEFORE:  BENDER, P.J.E., BOWES, J., and DUBOW, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED AUGUST 19, 2022**

K.P. ("Mother") appeals from the order adjudicating K.P.-I. ("Child"), born in November of 2021, a dependent child and suspending Mother's visitation with Child until Mother met her mental health program objectives for at least 90 days.  After review, we affirm.

The juvenile court provided the following summary in its opinion:

On December 14, 2021, the trial court held an adjudicatory hearing for Child.  Mother was present at this hearing.  The trial court heard testimony from the [Philadelphia Department of Human Services ("DHS")] Investigator, the [Community Umbrella Agency ("CUA")] Supervisor, and Mother.  Child was adjudicated dependent[,] and she was fully committed to DHS.  At this time, Mother's visits were suspended due to a finding of grave threat.[1]

---

[1] The trial court's determination that Mother was a grave threat to Child was based on the evidence presented at the dependency hearing.  The court noted that Mother's involvement with DHS began in 2012, which resulted in the involuntary termination of Mother's rights to three children.  Additionally,

*(Footnote Continued Next Page)*

> Mother's visits could resume once she showed consistency in her mental health treatment for at least ninety-days, at which time they could be modified to bi-weekly one-hour visits, line of sight/line of hearing supervised at the agency. Mother was also to provide an updated treatment plan and progress report prior to visits being re-implemented. Mother was also referred to the Clinical Evaluation Unit ("CEU") for a forthwith full drug and alcohol screen, dual diagnosis assessment, monitoring, and five random screens prior to the next court date. Mother was ordered to enroll in a dual diagnosis program, consistently attend such program, and provide updated treatment plans and progress reports. Mother was also referred to Behavioral Health Services ("BHS") for evaluation and recommendations. Mother was ordered to verify employment and provide proof of income to … [CUA] monthly, comply with CUA, remain in contact with CUA, and comply with a home assessment CUA was ordered to complete. Mother's referral to family school was also suspended until she showed consistency in her mental health program. Mother was also ordered to sign all necessary releases and consents. On December 27, 2021, Mother's [c]ounsel filed this appeal on behalf of Mother.

Trial Court Opinion ("TCO"), 2/2/22, at 3-4. As noted above, the court adjudicated Child dependent and ordered that visitation be suspended until Mother showed consistency in the mental health program for a ninety-day period. Additionally, the court scheduled the next hearing to take place on March 1, 2022.

On appeal, Mother raises the following issue for our review:

> Whether the trial court committed reversible error when it suspended Mother's visits with her minor [C]hild upon insufficient evidence that Mother presents a grave threat to the [C]hild?

---

another of Child's siblings and Mother tested positive for PCP at the time of that sibling's birth. That sibling died when in Mother's care. These occurrences were only some of Mother's actions that contributed to the court's determination that Mother presented a grave threat to Child. Some other actions by Mother were her combativeness and aggressiveness.

Mother's brief at 6.

Before we may address Mother's issue, "we must determine whether the order[] from which Mother appealed [is] appealable, because appealability implicates our jurisdiction." *In the Interest of J.M.*, 219 A.3d 645, 650 (Pa. Super. 2019) (citing *In Interest of N.M.*, 186 A.3d 998, 1006 (Pa. Super. 2018) (quoting *Kulp v. Hrivnak*, 765 A.2d 796, 798 (Pa. Super. 2018) ("[Since we] lack jurisdiction over an unappealable order, it is incumbent on us to determine, … whether the appeal is taken from an appealable order.")))). "Jurisdiction is purely a question of law; the appellate standard of review is *de novo* and the scope of review plenary." *Id.*

The issue of appealability was raised by the guardian *ad litem* ("GAL") in her brief and Mother has not responded to this allegation. Specifically, the GAL asserts that the suspension of Mother's visits with Child does not dispose of all claims and all parties and that another hearing was scheduled for March 1, 2022. Therefore, the GAL contends that the order issued was not a final order.

We must disagree with the GAL's position in that we conclude that the order appealed from is a final order. In the *J.M.* decision, this Court explained:

> Generally, a final order is any order that disposes of all claims and all parties. Pa.R.A.P. 341(b). Based upon the two-step procedure contemplated by the Juvenile Act for declaring a child dependent (*i.e.*, an adjudication followed by a disposition, *see* 42 Pa.C.S. § 6341(c)), this Court has held that it is the dispositional order following a dependency adjudication that is a final appealable order. *In Interest of C.A.M.*, … 399 A.2d 786 (Pa. Super. 1979).

- 3 -

Unlike other types of cases, dependency matters do not end following a child's disposition. *See In re Tameka M.*, … 534 A.2d 782, 784 (Pa. Super. 1987) (*en banc*) (discussing [the] unique ongoing nature of dependency matters), *aff'd*, … 580 A.2d 750, 752 (Pa. 1990) (approving of the Superior Court's recognition of the juvenile court's "continuing plenary jurisdiction in dependency cases under 42 Pa.C.S.[] § 6351"). The juvenile court is statutorily required to review the case periodically and issue orders relating to a variety of issues. 42 Pa.C.S. § 6351(e)(3), (f)-(g). The purpose of the periodic review hearings is to "determin[e] or review[] the permanency plan of the child, the date by which the goal of permanency for the child might be achieved[,] and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child." 42 Pa.C.S. § 6351(e)(1). In many cases, it may be months or years after the dependency disposition before the Juvenile Court has occasion to enter an order that truly disposes of all claims and all parties, such as by return to parents and the cessation of dependency, termination of parental rights and adoption of the child, transfer of custody to family or kin, or a child's aging out of the system.

Therefore, due to dependency's unique nature, the fact that further proceedings are contemplated is not dispositive of the finality of the order. *In the Interest of J.L.*, 216 A.3d 233, 236 n.1 (Pa. Super. 2019). In the dependency context, the court "must examine the practical consequences of the order to determine if the party challenging it has effectively been put out of court." *In re Interest of M.B.*, … 565 A.2d 804, 806 (Pa. Super. 1989). Thus, "this court acknowledges certain crucial points of finality when review is appropriate despite the fact that such determinations may later be modified by the trial court after further statutorily[-]mandated review hearings are held." *Id.* at 808.

*J.M.*, 219 A.3d at 650-52 (footnotes omitted). Thus, we conclude that the dispositional order appealed from is a final order. *Id.* (noting, "it is the Dispositional order following a dependency adjudication that is a final appealable order.").

However, the only issue raised by Mother involves the suspension of visitation based upon the court's determination that Mother presents a grave threat to Child. As noted above in *J.M.*, "dependency matters do not end following a child's disposition." *Id.* at 651. Rather, the "court is statutorily required to review the case periodically and issue orders relating to a variety of issues." *Id.* (footnote omitted). Specifically, footnote 6 in the *J.M.* case provides the following explanation:

> In general, the "[j]uvenile [c]ourt has the duty to act to provide for the 'protection and physical, mental and moral welfare' of a dependent child." *Tameka M.*, 580 A.2d at 755 (quoting 42 Pa.C.S. § 6351(a)). To that end, the Juvenile Act specifies 16 issues to be reviewed at each permanency review hearing. *See* 42 Pa.C.S. § 6351(f), (f.1). Such issues include matters relating to the child's placement; the child's permanency plan; the family's progress in alleviating the circumstances that brought the child into care; the child's placement goal; the timeframe to achieve the goal; the agency's reasonable efforts; the child's safety; services needed to transition the child to adulthood; whether the agency should file a petition to terminate parental rights; placement and visitation with the child's sibling; and opportunities for the child to participate in appropriate activities. 42 Pa.C.S. § 6351(f)(1)-(12). Additionally, the juvenile court must determine at every permanency hearing if and when the child should be returned, placed for adoption, placed with a legal custodian or fit and willing relative, or placed in another planned permanent living arrangement. 42 Pa.C.S. § 6351(f.1). Finally, the court must receive and evaluate any evidence of conduct by the parent that places the health, safety, or welfare of the child at risk, including evidence of the use of alcohol or controlled substance, whether or not the conduct was the basis for the determination of dependency. 42 Pa.C.S. § 6351(f.2). Based on the foregoing, the court shall order the continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child. 42 Pa.C.S. § 6351(g).

*Id.* at 651 n.6. Thus, the suspension of Mother's visitation does not counter the finality of the order at issue here.

Rather, the issue Mother raises regarding the temporary suspension of her visitation pending the scheduled March 1, 2022 hearing does not warrant immediate review. We conclude that the issue is premature because it could be remedied at the scheduled hearing. Conversely, if the trial court subsequently extends the suspension indefinitely or adds additional requirements after Mother has complied with the mental health program, she could appeal that order as one of the "crucial points … when review is appropriate despite the fact that such determinations may later be modified by the trial court." *Id.* 652. Moreover, we note that,

> "[i]n rare instances, we have approved restricting or temporarily suspending visitation even though there has been no showing of such severe mental or moral deficiencies in the parent as would constitute a grave threat to the child's welfare." ***In re Damon B.***, … 460 A.2d 1196, 1198 (Pa. Super. 1983) (holding reduction of mother's visitation rights was appropriate, even absent showing of mother's severe mental or moral deficiencies which would constitute grave threat to child's welfare, where visits were counterproductive to child's development of any bond with mother, and child experienced severe stress during visits; and reduction of visitation was temporary and limited in time, where court scheduled review hearing within next seven months).

*In the Interest of J.G.*, 1531 EDA 2019, unpublished memorandum at 3 (Pa. Super. filed December 16, 2019).[2]  Thus, we conclude that the issue Mother raises is not ripe for review.  Accordingly, we affirm the order from which she has appealed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/2022

---

[2] *See* Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).