J-S33032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.K.A.B., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.B., FATHER | : : : : : : | |
| | : | No. 3435 EDA 2017 |

Appeal from the Order August 28, 2017
in the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000775-2017,
CP-51-DP-0002461-2014

BEFORE:   OTT, J., McLAUGHLIN, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED AUGUST 09, 2018**

Appellant, J.B. ("Father"), files this appeal from the order by the Philadelphia County Court of Common Pleas granting the petition of the Department of Human Services ("DHS") and involuntarily terminating his parental rights to his minor, dependent son, J.K.A.B. ("Child"), born in October 2014, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), and (b).[1] Father also purports to appeal from the order changing Child's permanency goal to adoption pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351.  Father's counsel ("Counsel") filed a petition to withdraw and a brief pursuant to ***Anders***

---

[1] By separate order entered August 28, 2017, the court additionally involuntarily terminated the parental rights of any unknown putative father. No unknown father has filed an appeal.  Further, by separate order entered November 14, 2017, the trial court involuntarily terminated the parental rights of Child's mother, S.B. ("Mother").  Mother filed a separate appeal addressed by a memorandum at Superior Court Docket No. 4082 EDA 2017.

---

*   Former Justice specially assigned to the Superior Court.

***v. California***, 386 U.S. 738 (1967), averring the appeal is frivolous. We affirm the order terminating Father's parental rights, quash Father's appeal of the purported goal change, and grant Counsel's petition to withdraw.

The trial court summarized the relevant procedural and factual history, in part, as follows:

> On October 20, 2014, [DHS] received a General Protective Services ("GPS") report alleging that the Child and his mother tested positive for marijuana when Child was born.[2]  On October 23, 2014, Child was placed in a foster home through Tabor Child's Services, where he remained throughout the case.[3]  At that time the whereabouts and identity of Father were unknown to DHS.  By December 10, 2014, DHS had learned the identity and whereabouts of Father . . . .  Thereafter, an adjudicatory hearing was held on February 23, 2015, before the Honorable Jonathan Irvine who adjudicated [] Child dependent.  Throughout the involvement of DHS and later the Community Umbrella Agency ("CUA"), the court held regularly scheduled Permanency Review hearings to monitor the family's compliance with all court orders and the CUA Single Case Plan ("SCP").  These SCP meetings were held to assist the family with complying with all objectives and to provide any and all appropriate services as an aid to facilitate reunification.  During this period Father failed to attend each and every court hearing and SCP meeting.

Trial Court Opinion ("T.C.O."), 11/17/17, at 2-3 (citations to record omitted).

_____

[2] The family had been known to DHS since at least February 2012 due to the death of a child of Mother.  After investigation, DHS learned that yet two other children died in 2008 and 2009, respectively.  Petition for Termination of Parental Rights, 8/4/17, Exhibit "A," Statement of Facts, ¶¶a-d.  The cause of the deaths of two of the three children were undetermined.  ***Id.***

[3] As testified to by CUA case manager, Nick Sarro, Child was initially placed in a foster home, then placed with Maternal Grandmother for four months, and finally placed in his current foster home in January 2016.  N.T. at 40.

On August 4, 2017, DHS filed separate petitions to involuntarily terminate the parental rights of Father and Mother and to change the permanency goal from reunification to adoption. On August 28, 2017, the trial court held a termination hearing at which DHS presented the testimony of Nick Sarro, CUA case manager, Tabor Community Partners; Father, who was present and represented by counsel, testified on his own behalf. Child was represented by both a Guardian *Ad Litem* ("GAL") and legal counsel, who both supported the termination of Father's parental rights.[4] N.T. at 33-36.

On August 28, 2017, the trial court involuntarily terminated Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b). On the same day, the trial court held its decision with respect to Mother's parental rights in abeyance for Mother to have the opportunity to sign a voluntary relinquishment of her parental rights, and the matter was re-listed for November 14, 2017. N.T. at 77. In addition, the trial judge did not rule on DHS's petition for a goal change from reunification to adoption at that time,

_____

[4] This Court has recently held that we will address *sua sponte* the responsibility of an orphans' court to appoint counsel pursuant to 23 Pa.C.S.A. 2313(a). **See In re K.J.H.**, 180 A.3d 411, 413 (Pa.Super. 2018). In **In re Adoption of L.B.M.**, ___Pa.___, 161 A.3d 172, 180 (2017) (plurality), our Supreme Court held that Section 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in a contested involuntary termination proceeding. The Court defined a child's legal interest as synonymous with his or her preferred outcome. As the trial court in this case appointed a GAL for to advocate for Child's best interests and legal counsel to advocate for Child's legal interests, we find the trial court fulfilled its responsibility to appoint counsel pursuant to Section 2313(a).

but indicated on the record that he would wait until the conclusion of Mother's termination proceedings. Notes of Testimony ("N.T."), 8/28/17, at 37.

On October 1, 2017, counsel for Father filed a request for the reinstatement of Father's appellate rights *nunc pro tunc*. On October 5, 2017, the trial court granted Father permission to file an appeal *nunc pro tunc*. On October 6, 2017, Father filed a single notice of appeal as well as a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The notice of appeal indicated that Father was appealing the trial court's August 28, 2017 order, which solely terminated Father's parental rights.

While the termination order was entered at docket CP-51-AP-000775-2017, Father's notice of appeal also listed the docket for the dependency proceedings at CP-51-DP-0002461-2014. In his concise statement, Father challenged the termination of his parental rights and alleged that the lower court had erred in changing the goal to adoption. However, the lower court had not yet resolved DHS's goal change petition and did not enter a permanency review order changing Child's goal to adoption on the dependency docket until November 14, 2017.

As a preliminary matter, we must determine whether Father properly filed the appeal before this Court. Father only filed one notice of appeal but seeks to challenge two separate orders: the termination of his parental rights at docket CP-51-AP-000775-2017 and the change of the permanency goal to

adoption at CP-51-DP-0002461-2014. We note that the issues decided in these orders are wholly distinct; this Court has clarified that:

> Except in Philadelphia and Allegheny County, under the Juvenile Act jurisdiction to determine the propriety of the placement goal is vested exclusively in the juvenile division of the court of common pleas. 42 Pa.C.S.A. § 6302 and official comment thereto. The jurisdiction of the Orphans' Court is to terminate parental rights and is derived from a different statute. Pa.Stat.Ann. tit. 23, § 2102 and official comment thereto. Thus, the issues and proceedings before the juvenile court, on one hand, and the Orphans' Court on the other, are distinct.

*In re Interest of M.B.*, 565 A.2d 804, 809 (Pa.Super. 1989). While in this case the Philadelphia County Family Court Division resolved both issues, the lower court filed separate orders on separate dockets.

In the recent decision, *Commonwealth v. Walker*, ____ Pa. ____, ____ A.3d ____, 33 MAP 2017 (Pa. filed June 1, 2018), our Supreme Court held that there is a bright-line requirement that a single notice of appeal will not be adequate to appeal orders entered on more than one trial court docket; the *Walker* court cited to the 2013 amendment to the Official Comment in Pa.R.A.P. 341 which states "[w]here ... one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed." Pa.R.A.P. 341, Official Note.

While Father's notice of appeal listed two docket numbers and he attempts to challenge both the termination order and the goal change order on appeal, Father's notice of appeal only stated that he was appealing from the order entered on August 28, 2017, in which the trial court terminated his parental rights at docket number CP-51-AP-0000775-2017. No order was

entered on the dependency docket CP-51-DP-0002461-2014 on that date as the trial court expressly indicated that it wished to hold its decision on DHS's petition to change the permanency goal to adoption until it made its decision with respect to Mother's parental rights. As noted above, the lower court did not enter an order changing Child's permanency goal to adoption until November 14, 2017. As a result, Father's notice of appeal in this case solely applies to the trial court's termination order, we quash Father's appeal on the dependency docket (CP-51-DP-0002461-2014).

In this case, Counsel has filed an **Anders** brief and a petition to withdraw. When counsel files an **Anders** brief, this Court may not review the merits of the appeal without first addressing counsel's request to withdraw. **Commonwealth v. Washington**, 63 A.3d 797, 800 (Pa.Super. 2013); **see also Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa.Super. 2005) (stating, "When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw[]") (citation omitted).

In **In re V.E. & J.E.**, 611 A.2d 1267 (Pa.Super. 1992), this Court extended the **Anders** principles to appeals involving the termination of parental rights. **Id.** at 1275. Counsel appointed to represent an indigent parent on appeal from a decree involuntarily terminating parental rights may therefore petition this Court for leave to withdraw representation and submit an **Anders** brief. **In re S.M.B.**, **A.M.B., & G.G.B.**, 856 A.2d 1235, 1237 (Pa.Super. 2004). To withdraw, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citing **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa.Super. 2009)). Moreover, counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa.Super. 2005).

We further review Counsel's **Anders** brief for compliance with the requirements set forth in **Santiago**, *supra*.

[W]e hold that in the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

602 Pa. at 178-79, 978 A.2d at 361.

Counsel asserts that she has made a conscientious examination of the record and determined the appeal is frivolous. **Anders** Brief at 10, 17 (unpaginated). Counsel has attached to the petition to withdraw a copy of the letter sent to Father, enclosing a copy of her **Anders** brief and advising Father

- 7 -

of his right to retain private counsel or to proceed *pro se*. Hence, we conclude that Counsel has complied with the procedural **Anders** requirements.

Therefore, we first proceed to examine the issues counsel identified in the **Anders** brief and then conduct "a full examination of all the proceedings, to decide whether the case is wholly frivolous." **Commonwealth v. Yorgey**, ___A.3d.___, 2018 WL 2346441, at *4 (Pa.Super. filed May 24, 2018) (*en banc*) (quotation omitted).[5] Counsel's **Anders** brief raises the following issues for our review:

> 1) Whether the trial court committed reversible error, when it involuntarily terminated [F]ather's parental rights where such determination was not supported by clear and convincing evidence under the [A]doption [A]ct, 23 Pa.C.S.A. §2511(a)(1) and (2)?
>
> 2) Whether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of the child as required by the [A]doption [A]ct, 23 Pa.C.S.A. §2511(b)?

**Anders** Brief at 6 (unpaginated).

_____

[5] In **Yorgey**, an *en banc* panel of this Court relevantly held:

> [W]e must give **Anders** a most generous reading and review 'the case' as presented in the entire record with consideration first of issues raised by counsel. . . .[T]his review does not require this Court to act as counsel or otherwise advocate on behalf of a party. Rather, it requires us only to conduct a review of the record to ascertain if on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated. We need not analyze those issues of arguable merit; just identify them, deny the motion to withdraw, and order counsel to analyze them.

**Yorgey**, 2018 WL 2346441, at *5 (citation omitted).

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, [616 Pa. 309, 325, 47 A.3d 817, 826 (2012)]. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at [325-26, 47 A.3d at] 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)].

*In re T.S.M.*, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing

evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have

defined clear and convincing evidence as that which is so "clear, direct,

weighty and convincing as to enable the trier of fact to come to a clear

conviction, without hesitance, of the truth of the precise facts in issue." *In re*

*C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of*

*Adoption of Charles E.D.M., II*, 550 Pa. 595, 601, 708 A.2d 88, 91 (1998)).

In the case *sub judice*, the trial court terminated Father's parental rights

pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b). We have long held that,

in order to affirm a termination of parental rights, we need only agree with

the trial court as to any one subsection of Section 2511(a), as well as Section

2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

Here, we analyze the court's termination decrees pursuant to subsections

2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or

> subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), and (b).

With regard to the termination of parental rights pursuant to Section 2511(a)(2), we have indicated:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met:  (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted).  "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct.   To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties."  *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015)

(quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002)). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, 797 A.2d at 340 (internal quotation marks and citations omitted).

Further, as to Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M. [a/k/a E.W.C. & L.M. a/k/a L.C., Jr.]*, [533 Pa. 115, 123, 620 A.2d 481, 485 (1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In* re *T.S.M.*, 620 Pa. at 628-29, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted).

Moreover,

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d at 1219 (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)) (quotation marks and citations omitted).

In the case at bar, in finding grounds for termination pursuant to Section 2511(a)(1) and (2), and that termination was in Child's best interests pursuant to Section 2511(b), the trial court reasoned:

At the hearing, the CUA [r]epresentative testified that he was the worker on the Child's case for the past thirty[-]four months. The CUA Representative testified that he first made contact with Father in October 2015 and informed Father that he could visit the Child and seek reunification with Child provided he worked with DHS and the CUA [a]gency. Father, however, failed to visit the Child or to attend court hearings or participate in the programs offered by DHS or CUA. Father also failed to take a paternity test which he had requested. Father made no contact with the CUA [r]epresentative until April 2017, which impacted initiating services. The CUA [r]epresentative also testified that the termination of Father's parental rights would not cause irreparable harm to the Child and that the Child's primary parental

bond was with his foster parent. The CUA [r]epresentative also testified that Child's foster parent provided safety for Child as well as for the Child's medical needs. The testimony of the CUA [r]epresentative was deemed to be credible and accorded great weight. Based upon this testimony and the documents in evidence, this [c]ourt found clear and convincing evidence to terminate Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (2). The court determined that Father failed to remedy the conditions that brought the Child into care. This [c]ourt further concluded that termination of the Father's parental rights would be in the best interest of Child pursuant to 23 Pa.C.S.A. § 2511(b). This [c]ourt concluded that Child had a bond with his foster parents who were able to provide for all of the Child's daily needs.

T.C.O. at 4-5 (citations to record omitted).

A review of the record supports the trial court's finding of grounds for termination under Section 2511(a)(2). As we discern no abuse of discretion or error of law, we do not disturb the court's findings. The record reveals Father's lack of contact and cooperation with CUA as well as his lack of contact with Child and lack of interest in parenting. N.T. at 21-26.

Specifically, CUA case manager, Nick Sarro, testified that he contacted Father in 2014 and notified him of a court hearing, where he would be able to pursue a paternity test, but Father ultimately failed to appear. *Id.* at 21, 23. Father failed to contact CUA for a paternity test or any other reason until April 2017, when he contacted Mr. Sarro due to garnishment of his wages for child support. *Id.* at 22-23. Father failed to perform any parental duties, failed to inquire as to Child's well-being, and failed to request and/or have visitation. *Id.* at 22-23, 26. In addition, Mr. Sarro reported that Father admitted that he did not have stable housing for Child. *Id.* at 23. Notably, Mr. Sarro

testified that Father has had no contact with Child and has not expressed any interest in caring for Child. *Id.* at 24-25.

As this Court has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006). Hence, the record substantiates the conclusion that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused Child to be without essential parental control or subsistence necessary for his physical and mental well-being. *See In re Adoption of M.E.P.*, 825 A.2d at 1272. Moreover, Father cannot or will not remedy this situation. *See id.*

Further, upon review, we discern no abuse of discretion as to the trial court's finding that Child's developmental, physical and emotional needs and welfare favor termination of Father's parental rights pursuant to Section 2511(b). There was sufficient evidence to allow the trial court to make a determination of Child's needs and welfare, and as to the lack of a bond between Father and Child such that, if severed, would not have a detrimental impact on him.

Significantly, at the time of the hearing, Child had been in care for almost three years, essentially his entire life, and in his current pre-adoptive foster home for approximately one and a half years. N.T. at 18, 24, 26. Further, as Child had no contact with Father, there is no reason to believe

Child even knows who Father is. *Id.* at 25. Child's primary parental bond is with his foster parents, who provide love, safety, and stability and meet Child's general, medical, and developmental needs. *Id.* at 24-25. In addition, there is another child in the home who Child views as a sibling and with whom Child is bonded. *Id.* at 66-67. As such, Mr. Sarro testified that he had no reason to think it would cause any harm to Child to terminate Father's parental rights and change Child's goal to adoption. *Id.* at 25.

Similarly, Child's Guardian Ad Litem, Carla Beggin, Esquire, noted that she observed Child in his foster home and offered as follows:

> I did see [Child] in [his foster] home yesterday. He seems like a very happy, healthy three-year-old. He seemed very bonded with the foster parents. He lives in a lovely home. He has lots of toys. Lots of educational toys and games. So I would be in full support of [Child] staying where he is and for adoption.

*Id.* at 35-36.

Thus, as confirmed by the record, termination of Father's parental rights serves the Child's developmental, physical and emotional needs and welfare and was proper pursuant to Section 2511(b). While Father may profess to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. At the time of the hearing, the Child had already been in care for almost three years, essentially his entire life, and residing in his current pre-adoptive foster home for approximately a year and a half, and is entitled permanency and stability.

As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa.Super. 2004) (citation omitted).

Based on the foregoing independent analysis of the trial court's termination of Father's parental rights, we agree with counsel for Father that the within appeal is wholly frivolous. As such, we affirm the order of the trial court terminating Father's parental rights and grant Counsel's petition to withdraw.

Order at CP-51-AP-0000775-2017 affirmed. Appeal at CP-51-DP-0002461-2014 quashed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/18

- 17 -